UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:03 CV 1602 DDN |
| | ) | |
| PETER ERWIN BECKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter comes before the court upon the motion of plaintiff United States for summary judgment (Doc. 41). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held on May 24, 2005.

Plaintiff United States brought this action against defendants Peter Erwin Becker (Becker), Patricia E. Becker, A. Karsten Becker, and Peter R. Becker. The government seeks relief from the allegedly fraudulent transfers of real property to unlawfully evade the payment of $687,216.94 in victim restitution ordered in a criminal judgment issued by this court.

Plaintiff alleges the following claims:

Count 1: for a declaratory judgment that the Peter E. Becker and Patricia Becker Joint Revocable Trust (Becker Revocable Trust) was the alter ego or nominee of defendants Peter E. and Patricia Becker;

Count 2: fraudulent transfer of the Burtonwood Manor Condominium under 28 U.S.C. § 3304(a)(1), to recover the interest of Peter E. Becker in one-half of the sale proceeds of the property, $27,756.49 plus interest;

Count 3: fraudulent transfer of the Burtonwood Manor Condominium under 28 U.S.C. § 3304(b)(1)(A), for the same recovery as Count 2;

Count 4: fraudulent transfer of the Burtonwood Manor Condominium under 28 U.S.C. § 3304(b)(1)(B), for the same recovery as Count 2;

Count 5:     fraudulent transfer of Lot 1 of State Park Estates under 28
             U.S.C. § 3304(a)(1), for a judicial sale of the residence and
             recovery of one-half of the net sale proceeds;
Count 6:     fraudulent transfer of Lot 1 of State Park Estates under 28
             U.S.C. § 3304(b)(1)(A), for the same recovery as Count 5; and
Count 7:     fraudulent transfer of Lot 1 of State Park Estates under 28
             U.S.C. § 3304(b)(1)(B), for the same recovery as Count 5.

(Doc. 35 at 7-15.)   The court has federal question subject matter
jurisdiction, granted by 28 U.S.C. §§ 1331 and 1345. [1]


## Summary Judgment Standard

Summary judgment must be granted, if the pleadings and proffer of
evidence demonstrate that no genuine issue of material fact exists and
the moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Union
Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir.
2004) ("Th[e] Court determines whether the evidence, when viewed in the
light most favorable to the non-moving party, and according it the
benefit of all reasonable inferences, shows that there are no genuine
issues of material fact and that the moving party is entitled to
judgment as a matter of law.").  "A fact is 'material' if it might
affect the outcome of the case and a factual dispute is 'genuine' if the
evidence is such that a reasonable jury could return a verdict for the
non-moving party." Scottsdale Ins. Co. v. Tri-State Ins. Co. of Minn.,
302 F. Supp. 2d 1100, 1103 (D.N.D. 2004).

Initially, the moving party must demonstrate the absence of an
issue for trial.  Celotex, 477 U.S. at 323.  Once a motion is properly
made and supported, the nonmoving party may not rest upon the
allegations in its pleadings but must instead proffer admissible
evidence of specific facts showing that a genuine issue of material fact

---

[1]"Except as otherwise provided by Act of Congress, the district
courts shall have original jurisdiction of all civil actions, suits or
proceedings commenced by the United States, or by any agency or officer
thereof expressly authorized to sue by Act of Congress." 28 U.S.C. §
1345.

exists.  Fed. R. Civ. P. 56(e); <u>Howard v. Columbia Pub. Sch. Dist.</u>, 363 F.3d 797, 800 (8th Cir.), <u>cert. denied</u>, 2004 WL 2153070 (U.S. Nov. 1, 2004); <u>Krein v. DBA Corp.</u>, 327 F.3d 723, 726 (8th Cir. 2003).

The court finds that the pleadings, the parties' proffer of evidence, and the arguments of counsel establish that there is no genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law.

## Uncontroverted, Material Facts

**A.**   **Court Ordered Restitution**

On November 7, 2000, Becker pled guilty, in this court, to one count of mail fraud.  (Cause 4:00-CR-503, Doc. 20 at 1.)  Pursuant to his plea, Becker was ordered on March 1, 2001, to pay $687,216.94 in restitution, with a lump sum payment of $200,000 due on March 15, 2001,[2] and monthly restitution of not less than $2,500 per month.  (<u>Id.</u> at 5-6.)  On May 11, 2001, the United States filed a lien against Becker's real and personal property.  (Doc. 42, Ex. 2.)

During this time period, and since 1999, Becker and his wife have been embroiled in civil litigation brought by Quick Point, Inc., in the Circuit Court of St. Louis County (Cause 99C-003885).  (Doc. 42, Ex. 3 at 17-18.)  During this litigation, Quick Point "froze" all of Becker's and his wife's assets.  (<u>Id.</u> at 16-18; Ex. 4 at 13.)  Eventually, their assets were "unfrozen," liquidated, and applied toward the debt owed to this court resulting in $176,758.09 in payments and a remaining debt of $23,241.91.  (<u>Id.</u>, Ex. 5; 4:00-CR-503, Docs. 25, 27, 31.)  As of February 14, 2005, Becker owes $596,010.89 in restitution, accruing interest at 4.47%.  (Doc. 42, Ex. 1.)

After liquidating all financial accounts, Becker's house and the condominium were his only remaining assets.  (<u>Id.</u>, Ex. 3 at 16-17; Ex. 4 at 13.)  Becker had no other assets with which to pay his restitution debt, and his salary prior to his criminal conviction would not allow

---

[2]The court ultimately extended this deadline until April 13, 2001. (4:00-CR-503, Doc. 24.)

him to pay the $2,500 per month, as ordered by this court. (<u>Id.</u>, Ex. 4 at 9.)

**B.  Joint Revocable Trust**

On April 18, 1996, Becker and his wife established a revocable trust, known and referred to in transfer documents as the "Peter E. Becker and Patricia Becker Joint Revocable Trust dated April 18, 1996" (Trust Agreement). (<u>Id.</u>, Exs. 6, 7.)  Becker and his wife were both the grantors and co-trustees of the revocable trust, and retained control of the trust assets. (<u>Id.</u>, Ex. 6)  If Becker revoked the trust, all trust property would return to him and his wife as tenants by the entireties or as joint tenants with right of survivorship. (<u>Id.</u> at 2.)

On April 18, 1996, Becker and his wife transferred to the revocable trust their interest, as husband and wife, in their home (Lot 1 of State Park Estates) in Wildwood, Missouri. (<u>Id.</u>, Ex. 8.)  On October 15, 1996, Becker and his son Stephan transferred to the revocable trust their interest in a condominium (Burtonwood Manor Condominium) in Ballwin, Missouri. (<u>Id.</u>, Ex. 10.)

**C.  Transfer of the House Located in Wildwood, Missouri**

On March 30, 2001, Becker and his wife, as co-trustees of the revocable trust, transferred ownership of their home (Lot 1 of State Park Estates) to Becker's wife for "one dollar and other valuable considerations," in an effort to legally extinguish Becker's interest in the parcel. (<u>Id.</u>, Ex. 11.)  In 2003, the Beckers refinanced the same house (appraised at a value of $395,000), and Becker's wife used

$41,015.80 in equity to pay various debts.[3]  (Id., Ex. 4 at 25-30; Exs. 12-13.)

**D.    Transfer of the Condominium Located in Ballwin, Missouri**

On March 30, 2001, Becker and his wife, as co-trustees of the revocable trust, transferred ownership of the condominium to her for "one dollar and other valuable considerations."  (Id., Ex. 14.)   On February 19, 2002, Becker executed a durable power of attorney granting his wife the power to control any and all interest he had in the condominium.  (Id., Ex. 15.)  On March 22, 2002, Patricia Becker, acting as both Becker's spouse and on behalf of Becker as his attorney-in-fact, sold the condominium to Carole R. Sano netting a profit of $55,512.98. (Id., Exs. 16, 17.)

## The Instant Motion

In its motion for summary judgment, plaintiff argues that by making the transfer of his interest in the house and the condominium to his wife, Becker committed a fraudulent transfer as defined in 28 U.S.C. § 3304(a)(1), as alleged in Counts II and V of its first amended complaint (Doc. 35 at ¶¶ 45-55, 77-87.)  Specifically, plaintiff argues that the transfer was fraudulent, because Becker retained an interest in the house and condominium until transfer to his wife; the transfer was made after he was ordered by this court to pay a debt; after the transfers, he was insolvent having no other significant assets to pay the court-ordered debt; and, he failed to receive a reasonably

---

[3]$7,500 went toward settlement of the civil case against Quick Point, Inc.; $6,000 went to the Beckers' son; and the remainder went to Patricia Becker's mother's estate for repayment of a loan.  (Id., Ex. 4 at 25-30.)  Prior to the refinancing, the Beckers owed a $34,105.15 mortgage on the house; after refinancing, the Beckers owed an $80,000 mortgage.  (Id. Ex. 12.)  Defendants did not specifically admit or deny these facts in their response; therefore, they are deemed admitted for the purposes of the summary judgment motion.  See E.D. Mo. Local R. 7-4.01(E) ("All matters set forth in the statement of [material facts] the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

equivalent value for the property transfers having been paid only "one dollar and other valuable considerations." (Doc. 42 at 7-11.)

Plaintiff also argues it is entitled to summary judgment on Counts IV and VII of its first amended complaint (Doc. 35, ¶¶ 66-76, 98-108) for transfer of Becker's interest in the house and the condominium under 28 U.S.C. § 3304(b)(1)(B). Plaintiff argues Becker's actions violated this statutory provision, because he failed to receive equivalent value in exchange for the transfers, and he should have had a reasonable indication that he would incur debts beyond his ability to pay. Plaintiff alleges that Becker had no remaining substantial assets after the real property transfers, and that, prior to his criminal conviction, Becker did not receive a wage sufficient to pay the $2,500.00 per month in restitution. Accordingly, Becker could not have reasonably believed he would be able to earn a wage sufficient to pay the required restitution upon release from prison. Given these circumstances, Becker transferred these assets knowing that, as his debts became due, he would be unable to pay for them.

In response, defendants argue that the house is not an asset under statute, because it was held in tenancy by the entireties and is not subject to collection by the government, as it is specifically excluded from the term "asset" under the statute. Defendants allege that, under Missouri law, they owned the property in tenancy by the entireties before the transfer to the revocable trust, and that the subsequent transfer to the trust did not affect how the property was held. Therefore, plaintiff was not able to attach the house while in the trust and cannot attach the house upon transfer to Becker's wife. Moreover, defendants argue that any exception to the attachment of property held in tenancy by the entireties does not apply, because Becker transferred the property to his wife on March 30, 2001, prior to the time plaintiff's lien attached on May 11, 2001.

Defendants also argue that, even if the house is an asset subject to attachment, plaintiff cannot establish that the house was not transferred for equivalent value. Defendants argue that Becker transferred the house to his wife in exchange for the liquidation of her retirement assets to be paid toward Becker's court-ordered restitution.

Also, defendants argue that plaintiff is not entitled to summary judgment, because it failed to establish the value of Becker's interest in the house.

With regard to the condominium, defendants argue that plaintiff cannot succeed on its claim without making Sano, as the purchaser of the condominium, a party to the suit under Fed. R. Civ. P. 19. Moreover, defendants contend that plaintiff's claim fails because Sano was a good faith purchaser for value; therefore, the transfer is valid. Lastly, defendants contend there is a genuine issue of material fact as to what interest Becker had in the condominium, because Stephan Becker owned the condominium, Becker merely co-signed on the loan, Becker contributed no money toward the down payment or mortgage, and Becker and his wife received no proceeds from the condominium sale.

In reply, plaintiff argues that it had a lien in effect on Becker's property when judgment was entered against Becker on March 1, 2001; therefore, plaintiff had "attached" Becker's property interests before the property was transferred to his wife. Plaintiff further argues that, when the Beckers first purchased the house, it was held in tenancy by the entireties. However, after transfer to the revocable trust, that tenancy was severed and the property was held in tenancy in common. This is so, according to plaintiff, because Becker can take unilateral action with respect to the trust res, and the trust has no specific requirement that property removed from the trust return to the Beckers in tenancy by the entireties or with any right of survivorship. Alternatively, plaintiff asserts that, even if the Beckers held the house and the condominium in tenancy by the entireties, the characteristics of such a holding under Missouri law still constitute property subject to attachment under federal law.

With respect to defendants' contention that Becker's wife agreed to liquidate her retirement assets in exchange for transfer of the house, plaintiff contends that the wife's assets were liquidated by the Circuit Court of St. Louis County in a civil suit where she was a named defendant, not as valuable consideration. Regarding Sano as a necessary party, plaintiff argues that it is not required to "seek the remedy of

avoidance of the fraudulent transfer of the condominium," but can elect to seek its remedy against Patricia Becker as the first transferee.

## DISCUSSION

The Mandatory Victims Restitution Act (MVRA) allows a federal court to order a convicted criminal defendant to make restitution, in addition to any additionally imposed sentence. <u>See</u> 18 U.S.C. § 3663(a)(1)(A).

> The MVRA provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means. 18 U.S.C. § 3664(m)(1)(A)(i)-(ii) (2000). The Government is authorized under 18 U.S.C. § 3613(a) (2000) to collect criminal fines and restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." The federal law that provides the practices and procedures for the enforcement of a civil judgment is the FDCPA [Federal Debt Collection Procedures Act]. 28 U.S.C. §§ 3001-3308 (1994).

<u>United States v. Phillips</u>, 303 F.3d 548, 550-51 (5th Cir. 2002), <u>cert. denied</u> 537 U.S. 1187 (2003).

To this end, the FDCPA provides a mechanism to collect post-judgment debts, and specifically provides the United States with a civil cause of action when a debtor fraudulently transfers property either before or after the debt is incurred. <u>See</u> 28 U.S.C. § 3304.

## A.    United States v. Craft

Both parties cite <u>United States v. Craft</u>, 535 U.S. 274 (2002). In <u>Craft</u>, a husband failed to pay property taxes for a number of years, resulting in a tax assessment of $482,446. At the time the government's lien attached, the husband and his wife owned real property as tenants by the entireties. After notice of the lien, the husband transferred his interest in the tenancy by the entireties property to his wife. The wife subsequently sold the property, and placed one-half of the sale proceeds in an escrow account in exchange for the IRS agreeing to release the lien to effect the sale. Later, the wife brought an action to quiet title to the escrow funds. 535 U.S. at 276-77.

The government argued that the lien attached to the husband's interest in the tenancy by the entireties property and that the later

transfer was fraudulent.  The district court granted summary judgment in favor of the government, finding that the tax lien attached at the moment of the transfer to the wife, terminating the tenancy by the entireties and entitling the government to one-half the property value. The Sixth Circuit reversed, finding that under Michigan law the husband had no divisible interest in property held by tenancy by the entireties. Id.

On appeal, the Supreme Court held that the husband's "interest in the entireties property constituted 'property' or 'rights to property' for the purposes of the federal tax lien statute." Id. at 288.  In reaching its holding, the court noted that it must look to state law to determine what rights the husband had in the property, and then turn to federal law to determine if those interests constitute property.  Id. at 278.

The Michigan statute regarding tenancy by the entireties provided the husband with the following rights:

> the right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to  sell the property with the respondent's consent and to receive half the proceeds from such a sale, the right to place an encumbrance on the property with the respondent's consent, and the right to block respondent from selling or encumbering the property unilaterally.

Id. at 282.

The court found that Michigan law granted "the most essential property rights" to tenants by the entireties.  Id. at 283. Accordingly, the court determined that the tenancy by the entireties property was "property" capable of being attached by a federal tax lien against one property owner.  Id. at 285.  The court found the interest subject to attachment even though Michigan, like the majority of states, prevents unilateral alienation of property held in tenancy by the entireties.  Id. at 284-85.  In this regard, the court noted its jurisprudence reflects that the inability to unilaterally alienate property is not fatal to the government obtaining a lien, and that to hold otherwise would "exempt a rather large amount of what is commonly thought of as property."  Id. at 284.

Because the subject matter of _Craft_ relates to _tax_ liens, defendants argue that the holding is only applicable in that arena, and not applicable to the type of debt at issue here. The court disagrees. 18 U.S.C. § 3613(a) allows the United States to "enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law . . . ." 18 U.S.C. § 3613(a). The statute further provides that a restitution order under the MVRA "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c);[4] see also United States v. Abdelhadi, 327 F. Supp. 2d 587, 601 (E.D. Va. 2004). This interpretation is further buttressed by 18 U.S.C. § 3613(f), which provides:

> (f) Applicability to order of restitution.--In accordance with section 3664(m)(1)(A) of this title, all provisions of this section [18 U.S.C. § 3613] are available to the United States for the enforcement of an order of restitution.

18 U.S.C. § 3613(f).

Therefore, to the extent it is applicable and necessary to the resolution of the instant motion, the court considers _Craft_ both instructive and authoritative.

### B.   Becker's Interest in the House

In order to address the summary judgment motion, it is necessary to first determine when plaintiff's lien attached and what interest Becker had in the house as a matter of law and fact. Cf. In re Oliver, 172 B.R. 924 (E.D. Mo. 1994) ("The initial legal issues are whether the tax refunds constitute tenancy by the entirety.").

---

[4]**(c)  Lien.**--A fine imposed pursuant to the provisions of subchapter C of chapter 227 of this title, or an order of restitution made pursuant to sections 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of this title, is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." 18 U.S.C. § 3613(c).

Regarding the lien, defendant argues that the date the notice of lien was filed, May 11, 2001, controls; therefore, the lien attached after the house was transferred to Patricia Becker on March 30, 2001. Plaintiff counters that the lien attached upon entry of judgment, March 1, 2001, pursuant to 18 U.S.C. § 3613(c) ("The lien arises on the entry of judgment"; see note 5, <u>supra</u>); and therefore prior to the transfer.

As previously noted, 18 U.S.C. § 3613 prescribes civil remedies for satisfaction of unpaid fines, and specifically encompasses orders of restitution under the MVRA. As plaintiff argues, the government's lien arose on the entry of judgment, not at the later notice of filing. To hold otherwise would allow judgment debtors, with minimal exception, to evade attachment during the period following judgment and notice of the lien, and would circumvent the authority and purpose of a judgment lien.

Accordingly, whatever interest Becker had at the time judgment was entered was subject to the lien.

Turning to Becker's interest in the house, defendants argue that the Beckers held the house in tenancy by the entireties prior to transfer to the trust, and plaintiff does not dispute this fact. The parties are in discord, however, as to what interest the Beckers held once the property was part of the trust corpus. Defendants maintain that the property continued to be held in tenancy by the entireties. Moreover, defendants note that § 3301(2)(c) of the FDCPA specifically excludes property held in tenancy by the entireties:

(2) "Asset" means property of a debtor, but does not include--

. . .

    (c) an interest in real property held in tenancy by the entirety, or as part of a community estate, to extent such interest is not subject to process by the United States holding a claim against only one tenant or co-owner.

28 U.S.C. § 3301(2)(c).

In keeping with <u>Craft</u>, it is necessary to turn to Missouri law to determine the parties' interests.

    Tenancy by the entirety is a form of ownership in property created by marriage in which each spouse owns the

entire property rather than a share or divisible part. In other words, the husband and wife have unity of interest, unity of entirety, unity of time, and unity of possession, and both are seized of the entirety. Moreover, in Missouri there is a presumption that both personal property and real estate, owned by a husband and wife, are held as tenants by the entirety. This form of title derives from ancient common law, and serves the purpose of making it difficult, if not impossible, for a creditor of one spouse to reach that spouse's interest in property held by both spouses as tenants by the entirety. Tenancy by the entirety is distinguishable from joint tenancy by one singular characteristic. The tenancy cannot be destroyed involuntarily by an individual creditor. And one spouse cannot destroy the entirety without the express consent of the other spouse.

In re Popkin & Stern, 292 B.R. 910, 918 (8th Cir. 2003) (footnotes omitted).

In the case at bar, the trust agreement sets forth rights and duties with respect to the "Grantors" (Peter Becker and Patricia Becker) and "Trustees" (Peter Becker and Patricia Becker). Plaintiff argues that Becker's rights as trust grantor give him the unilateral power to revoke the trust, direct trustees to take any action related to the trust, remove property from the trust, and receive all net income from the trust. (Doc. 42, Ex. 6, at 1-3, 14.) Moreover, plaintiff argues that the trust does not require that property removed from the trust be returned to Becker and his wife as tenants by the entireties or as joint tenants with right of survivorship. (Id.) Defendants dispute this interpretation, and, citing the same trust provisions, argue that any property removed from the trust was required to be returned to Becker and his wife in tenancy by the entireties or as joint tenants with right of survivorship.

"Interpretation of provisions within a contract is a matter of law for the trial court to decide, not a factual issue for resolution by the jury." Hougland v. Pulitzer Pub. Co., Inc., 939 S.W.2d 31, 33 (Mo. Ct. App. 1997); accord Bydalek v. Brines, 29 S.W.3d 848, 856 (Mo. Ct. App. 2000) ("[C]onstruction of a written contract is ordinarily a question of law, not of fact."). Neither party offers facts or suggestions that the trust is somehow ambiguous, and "[a] mere difference of opinion as to the proper interpretation of the contract does not render the

contract ambiguous as a matter of law." <u>Principal Mut. Life Ins. Co.</u>
<u>v. Karney</u>, 5 F. Supp. 2d 720, 729 (E.D. Mo. 1998).

The relevant provision states:

> **ARTICLE ONE.** During the lifetimes of both Grantors, and
> during the lifetime of the survivor Grantor after the death
> of the first of them to die, Grantors, or said survivor, may,
> at any time and from time to time, transfer other property
> to this trust. During the lifetimes of Grantors, or of the
> survivor Grantor after the death of the first of them to die,
> Grantor(s) may remove property from this trust, revoke this
> trust in whole or in part, and/or amend any or all of the
> provisions of this Trust Agreement, but upon the death of the
> last of Grantors to die, the provisions of this Trust
> Agreement shall become irrevocable and unamendable. However,
> any revocation and/or amendment shall be made by instrument
> in writing duly signed by both or either of Grantors while
> both are living, or by the survivor Grantor after the death
> of the first of them to die, which said instrument shall be
> delivered to the then duly acting Trustees of said trust;
> provided, that in the event of any such revocation, whether
> in whole or in part, during the lives of both Grantors,
> property which is thereby removed from said trust shall be
> returned to said Grantors as tenants by the entireties or as
> joint tenants with right of survivorship. Any transfer of
> property to the trust and any removal of property from the
> trust shall be made by Grantor(s) without the requirement of
> any specific formal actions. No trustee shall be required
> to receive an addition to the assets of the trust without the
> trustee's prior written consent to the addition.

(Doc. 42, Ex. 6 at 1-2.)

Defendants dispute the government's argument that, if Becker
removed property from the trust, without first revoking the trust
itself, he was not bound to return the property to tenancy by the
entireties or joint tenancy with right of survivorship. Defendants note
the specific trust language stating "During the lifetimes of Grantors,
or of the survivor Grantor after the death of the first of them to die,
Grantor(s) may remove property from this trust, revoke this trust in
whole or in part, and/or amend any or all of the provisions of this
Trust Agreement . . . ." Specifically, defendants interpret the use of
the parenthetical plural in "Grantor(s)" as reflecting that either both
grantors together or one of the grantors if the other is deceased can
revoke or amend, not that either grantor can act unilaterally prior to
the death of the other.

A clear reading of the trust language, however, reveals defendants' interpretation is incorrect. The trust language preceding the language relied on by defendants states "During the lifetimes of both Grantors, and during the lifetime of the survivor Grantor after the death of the first of them to die, Grantors, or said survivor, may, at any time and from time to time, transfer other property to this trust." This language indicates what defendants argue: that the grantors together, or the sole-surviving grantor, may take a specific action. The next provision of the trust, however, (which states the authority to remove property from the trust, revoke the trust, or amend the trust) speaks similarly to a situation where both grantors are alive or one is dead; however, the provision does not retain the same relevant language ("Grantors, or said survivor, may"), but instead provides that "Grantor(s) may." This distinction reflects purposeful drafting; the plain language of the later provision evidences an intent to allow either grantor to exercise his or her right to revoke the trust, remove property, or amend the trust unilaterally.

While the trust provision allows either Becker or his wife to remove property from the trust, revoke the trust, or amend the trust at any time, any revocation or amendment must be made in writing (by one or both grantors), and any property removed upon revocation must be returned to tenancy by the entireties. See id. ("[P]rovided, that in the event of any such revocation, whether in whole or in part, during the lives of both Grantors, property which is thereby removed from said trust shall be returned to said Grantors as tenants by the entireties or as joint tenants with right of survivorship."). With regard to property removed that is not predicated on revocation, the trust states that "[a]ny transfer of property to the trust and removal of property from the trust shall be made by Grantor(s) without the requirement of any specific formal actions." See id.

Invoking the maxim *expressio unis est exclusio alterius* (the expression of one thing is the exclusion of the other), the court finds the trust language attempts to discern between removal subsequent to revocation, and removal with no condition precedent, by clearly stating "that in the event of revocation" property needs to be returned to a

form of holding with survivorship rights.  Excluding removal without
prior revocation in language prescribing how property shall be returned
upon removal, and then specifically stating removal of property shall
be made with no "specific formal action," is meaningful and should not
be discounted.  Cf. Kansas City Life Ins. Co. v. Wells, 133 F.2d 224,
227 (8th Cir. 1943) ("Contracts must be construed as written.").

Plaintiff also asserts that Becker had the right to unilaterally
revoke the trust, direct trustees to take any action related to the
trust, unilaterally remove property from the trust, and receive all net
income from the trust, consistent with a tenancy in common.  Article Two
of the trust provision states in pertinent part: "During the lifetimes
of both Grantors, and during the lifetime of the survivor Grantor after
death of the first of them to die, all of the net income of the trust
shall be distributed to Grantor(s), or in such manner as Grantor(s) may
designate from time to time . . . ."  (Id. at 2-3.)  Moreover, as a
grantor, Becker had an expressed ability to unilaterally "direct the
Trustees to take or to omit taking any action in regard to sales,
investments, or retention of assets, or any other matter relating to the
administration of [the] Trust . . . ."  ( Id. at 14.)

In In re Stanke, 234 B.R. 439 (W.D. Mo. 1999), husband and wife
owned property as tenants by the entireties.  Id. at 440.  The couple
each established separate trusts and transferred the property to their
respective trusts.  Id. at 440-41.  Contemporaneous with transfer, the
couple executed an agreement purporting to convert all property held in
joint tenancy to that held as tenancy in common.  Id. at 440.  In
holding that the property was not held in tenancy by the entireties
after conveyance to the trusts, the court considered, among other
things, the specific provisions in the trust document that were
inconsistent with the characteristics of a tenancy by the entireties,
namely: either trustee could act on behalf of the trust without the
other's consent; either party could withdraw property from, or add to,
the trust without the other's consent; and either party had the right
to "[s]ell, encumber, lease, abandon, or dispose of any trust property."
Id. at 444-45.

Becker's rights and obligations under the Trust Agreement are similar in character and scope to those provisions in <u>Stanke</u> that the court found uncharacteristic of a tenant by the entireties. The primary characteristic of tenancy by the entireties property is that neither spouse may revoke, terminate, or burden the property unilaterally. <u>See</u> <u>In re Popkin</u>, 292 B.R. at 918. In contrast, a tenant in common is able to alienate the property without the express consent of his or her spouse. <u>See</u> <u>In re Abernathy</u>, 259 B.R. 330, 336 (8th Cir. 2001). The Trust Agreement makes no specific restraint on Becker's ability to alter trust holdings absent his wife's express consent and, to this extent, Becker's rights and obligations in relation to his wife's are more in keeping with that of a tenant in common.

Accordingly, the court finds that Becker and his wife held the house in trust as tenants in common.

Assuming *arguendo* that defendants are correct and that they held the house in trust as tenants by the entireties, the property is still an asset subject to plaintiff's lien under 28 U.S.C. § 3301(2)(c). As discussed <u>supra</u>, property held in tenancy by the entireties is not considered an "asset" for the purposes of the FDCPA, unless "it was subject to process by the United States holding a claim against only one tenant or co-owner." 28 U.S.C. § 3301(2)(c).

In this case, plaintiff held a lien on Becker's property interests upon entry of judgment (March 1, 2001). And, as set forth in <u>Craft</u>, one party's interest in tenancy by the entireties property can constitute property for the purposes of attachment depending on the property rights the individual debtor is granted under state law. <u>Craft</u>, 535 U.S. 288.

In their response, defendants cite <u>Bolton Roofing Co., Inc. v. Hedrick</u>, 701 S.W.2d 183 (Mo. Ct. App. 1985). In <u>Bolton</u>, defendants husband and wife owned property as tenants by the entireties. 701 S.W.2d at 184. They transferred this property to a trust, whereby they were both classified as grantors, husband was the trustee, and husband, wife and their children were beneficiaries. <u>Id.</u> Subsequent to the transfer, plaintiff obtained a judgment against the husband. <u>Id.</u> The trust contained a spendthrift provision seeking to limit the ability of beneficiaries to use trust property, or creditors to attach trust

property, for the purposes of applying toward an existing or anticipated debt. <u>Id.</u> Plaintiff challenged the provision, arguing that it was invalid under Missouri law because husband was both a grantor and a beneficiary of the trust. <u>Id.</u>

The court held that the spendthrift provision was valid under the facts of the case. <u>Id.</u> at 184-85. The court noted that the property was not subject to attachment of husband's tenancy by the entirety interest prior to transfer to the trust; therefore, the spendthrift provision was not invalid for continuing to bar a creditor from what it already was unable to do, <u>i.e.</u>, attach husband's interest in the property. <u>Id.</u>

While <u>Bolton</u> is somewhat analogous to this action, its authority is rather negated in light of <u>Craft</u> and the instant facts. First, a spendthrift provision is valid in Missouri "if it restrains either the voluntary or involuntary transfer or both the voluntary and involuntary transfer of a beneficiary's interest." Mo. Rev. Stat. § 456.5-502.1. However, "[w]hether or not the terms of a trust contain a spendthrift provision, during the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors." Mo. Rev. Stat. 456.5-505. In the trust at hand, Becker has the express right to revoke the trust document and he is the trust "settlor." <u>See</u> (Doc. 42, Ex. 6 at 1-2.) Accordingly, he cannot rely on the spendthrift provision to prevent plaintiff's attachment of trust assets.

In Missouri, the rights of a tenant by the entireties include: (1) the right to possess the whole, undivided estate, <u>Ronollo v. Jacobs</u>, 775 S.W.2d 121, 123 (Mo. 1989); (2) the right to have the tenancy converted to a tenancy in common upon divorce, <u>id.</u>; (3) the right of survivorship, <u>Cox v. C.I.R.</u>, 121 F.3d 390, 392 (8th Cir. 1997); (4) the right to one-half of rents and profits derived from the property, <u>id.</u>; (5) the right to assign interest in the property with the consent of both spouses, <u>Steffens v. Forbes</u>, 778 S.W.2d 22, 23 (Mo. Ct. App. 1989); and (6) the right to convey the property with the consent of both spouses, <u>Gifford v. Geosling</u>, 951 S.W.2d 641, 644 (Mo. Ct. App. 1997).

On review, the rights afforded tenants by the entireties in Missouri are substantively similar to those afforded tenants in

Michigan, as outlined in <u>Craft</u>. Subsequently, the rights afforded under Missouri law constitute basic, essential property rights capable of attachment by the United States.[5]

Accordingly, any property held in tenancy by the entireties was subject to process against only one tenant (Becker) and not excluded as an asset under the FDCPA.

**C.    Becker's interest in the Condominium**

In their response, defendants argue that plaintiff is not entitled to summary judgment as it pertains to the condominium because (1) they failed to join the buyer (Sano), and that any transfer to Sano under 28 U.S.C. § 3307(a),[6] as a third party who paid value for the property, is valid as to Sano as the transferee, and (2) there is a factual issue as to Becker's interest in the property.

With respect to Becker's interest in the property, defendants argue that Becker merely co-signed the note for his son to purchase the condominium, Becker contributed no money towards the down payment or mortgage, and he received no proceeds from the sale. Even assuming the foregoing is true, defendants' argument does not correctly describe Becker's interest in the condominium during the relevant time period.

_____

[5]Defendants argue that the house may not be subject to attachment, as a primary residence is normally exempt from tax levy. <u>See</u> 26 U.S.C. § 6334(a)(13)(B). However, 18 U.S.C. § 3613(a)(1) makes clear that the exemptions listed in 26 U.S.C. § 6334 do not include § 6334(a)(13)(B) for principal residence. <u>See</u> 18 U.S.C. § 3613(a)(1) ("[P]roperty exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law[.]"); <u>United States v. Jaffe</u>, 314 F. Supp. 2d 216, 227 (S.D.N.Y. 2004), <u>aff'd</u>, --- F.3d ---, WL 1806120 (2d Cir. 2005) (holding that 18 U.S.C. § 3616(a) does not exempt homestead property from a restitution order). Moreover, at least one court has held the government's lien on a defendant's property pursuant to 18 U.S.C. § 3613(a) preempts a state's homestead exemption. <u>See</u> <u>United States v. Lampien</u>, 89 F.3d 1316, 1320 (7th Cir. 1996), <u>vacated on other grounds</u>, <u>United States v. Lampien</u>, 132 F.3d 37, No. 96-3337 (7th Cir. Dec. 31, 1997) (unpublished table text).

[6](a) "Good faith transfer.--A transfer or obligation is not voidable under section 3304(b) with respect to a person who took in good faith and for a reasonably equivalent value or against any transferee or obligee subsequent to such person." 28 U.S.C. § 3307(a).

On October 15, 1996, Becker and his son Stephan transferred ownership of the condominium to the revocable trust. Thereby, Stephan's interest in the condominium was extinguished. (Doc. 42, Ex. 10.) To this end, the condominium is held in the same tenancy, and subject to the same legal principles and precedent, as the house. See supra section B.

In addition, plaintiff is not precluded from summary judgment for failing to join Sano. Pursuant to 28 U.S.C. § 3306(a), plaintiff has the ability to seek alternative remedies:

(a) In general.--In an action or proceeding under this subchapter for relief against a transfer or obligation, the United States, subject to section 3307 and to applicable principles of equity and in accordance with the Federal Rules of Civil Procedure, may obtain--

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States;

(2) a remedy under this chapter against the asset transferred or other property of the transferee; or

(3) any other relief the circumstances may require.

28 U.S.C. § 3306(a).

Plaintiff does not dispute that § 3307(a) applies, making the transfer valid as to Sano. However, plaintiff contends that it is not seeking any remedy of avoidance against Sano under § 3306(a)(1), but is seeking relief pursuant to § 3306(a)(2) against the property of Patricia Becker as the first transferee. Accordingly, there is no requirement under Fed. R. Civ. P. 19 that Sano be joined in order to effect a proper disposition. See Fed. R. Civ. P. 19 ("A person . . . shall be joined as a party in the action if . . . the person . . . is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest.").

Therefore, to the extent the house was subject to plaintiff's lien prior to transfer, so too is the condominium.

**D.**   **Transfer of the House and Condominium to Patricia Becker**

28 U.S.C. § 3304(a)(1) states:

(a) Debt arising before transfer.--Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if--

   (1)(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and

   (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation
.
. . . .

28 U.S.C. § 3304(a)(1)(A), (B).

Applying this statutory provision to the instant facts, the court finds that the debt unquestionably arose before the transfer was made; judgment was entered on March 15, 2001, and the transfer in question occurred on March 30, 2001.  <u>See</u> 18 U.S.C. § 3616(c); <u>see also</u> n.4, <u>supra</u>.

With respect to value in exchange for the transfer of Becker's interest, defendants assert that Patricia Becker allowed her retirement benefits to be liquidated and applied toward Becker's state court debt in exchange for the transfer of his interest in the house.  In support of their assertion, defendants advert to plaintiff's statement of facts noting that "[a]ll of Peter Becker and Patricia Becker's financial accounts were liquidated and delivered to the District Court for application toward Peter Becker's criminal debt."  (Doc. 43 at ¶ 10.)

Moreover, defendants argue that Patricia Becker's deposition testimony, at a minimum, creates an issue of fact as to whether she agreed to liquidate her retirement assets in exchange for a 100% interest in the house.  <u>See</u> Doc. 42, Ex. 4 at 21-22.  She testified:

Q:   [W]hat happened to your husbands's ownership interest in the house?

```
A:    He relinquished it, literally.

Q:    And why would he have relinquished it?

A:    Because he lost that much money.  I mean, he lost
      all of my money.  He lost my retirement fund.  He
      lost his money, his retirement fund.  And he was
      the one that put it all in jeopardy.  I wasn't
      asked  about  this.   I  didn't  make  any  such
      decisions.
. . .

Q:    When the house went from being in you and your
      husband's name into being in your name, did you
      pay any money to your husband for any ownership
      interest he still had in the house?

A:    I didn't have any money.

Q:    So you didn't pay him any money --

A:    No.

Q:    -- to get the house just put in your name?

A:    No.  Why should I have?  Why should I have even
      paid money?  I don't understand that question.

. . .

A:    Like he sold the house to me?  Is that what you're trying --

Q:    Yes.

A:    No. No.
```
(Doc. 42, Ex. 4 at 21-23.)

Patricia Becker's deposition testimony does not create a genuine issue of material fact.  She states that Becker relinquished his interest to her because *he* lost all her money and retirement assets. There is no indication in the testimony that her retirement assets were given in exchange for full interest in the house, and she specifically states that he lost her retirement fund.

Additionally, plaintiff proffers documentation supporting its position that Patricia Becker's retirement assets were attached and liquidated pursuant to a court order.  Patricia Becker was a named defendant in an action in the Circuit Court of St. Louis County.  (Doc.

57, Ex. 18.)  As a result of the circuit court case, Patricia Becker's retirement assets were attached pursuant to an order of attachment, and subsequently liquidated and paid into this court.  See  Doc. 42, Ex. 5; Doc. 57, Ex. 20.

Defendants counter that, as a party to the suit, Patricia could have legally contested any court-ordered liquidation of assets, but instead acquiesced to asset liquidation in consideration for receiving full interest in the house.  They, however, proffer no admissible evidence supporting this allegation.  See Howard, 363 F.3d at 800 (the non-moving party must establish facts supporting a genuine issue of material fact).

The recital on the transfer deeds states that Becker received "one dollar and other valuable considerations" in exchange for his transferred interest.  (Doc. 42, Ex. 11, Ex. 14.)  28 U.S.C. 3303(b) provides that a transfer is made for "reasonably equivalent value" "if the person acquires an interest of the debtor in an asset pursuant to . . . execution of a power of sale for the acquisition or disposition of such interest upon default under a mortgage, deed of trust, or security agreement."  28 U.S.C. § 3303(b); see United States v. Moore, 156 F. Supp. 2d 238, 246 (D. Conn. 2001) (husband's transfer of interest in real property to wife for $10,000 was not "reasonably equivalent value" within the meaning of the FDCPA).

It is undisputed that the house was appraised for $395,000, and the sale of the condominium netted Patricia Becker $55,512.98.  And, as previously discussed, defendants have proffered no relevant evidence suggesting Patricia Becker relinquished her retirement assets in exchange for receiving 100% interest in the house and condominium. Accordingly, there is no showing on the record evidencing that the transfer of the house or the condominium was in exchange for a reasonably equivalent value.

Regarding Becker's solvency, there is no dispute or evidential proffer showing that Becker was anything other than insolvent when making the transfer.  Prior to the transfer, Becker had no assets except for the house and the condominium.  After transfer, Becker had no substantial assets to pay his restitution debt, and he failed to make

the full $200,000 payment due on April 13, 2001.  See 28 U.S.C. §
3302(a) ("[A] debtor is insolvent if the sum of the debtor's debts is
greater than all of the debtor's assets at a fair valuation."); §
3302(b) ("[D]ebtor who is generally not paying debts as they become due
is presumed to be insolvent.").

Accordingly, the transfer of Becker's interest in the house and
condominium to his wife was fraudulent within the meaning of 28 U.S.C.
§ 3304(a)(1)(A), (B).

Plaintiff alternatively argues that the transfer was fraudulent
under 28 U.S.C. § 3304(b)(1)(B):

> (1)  Except as provided in section 3307, a transfer
>      made or obligation incurred by a debtor is
>      fraudulent as to a debt to the United States,
>      whether such debt arises before or after the
>      transfer is made or the obligation is incurred, if
>      the debtor makes the transfer or incurs the
>      obligation--
>
>      (A)  with actual intent to hinder, delay,
>           or defraud a creditor; or
>
>      (B)  without receiving a reasonably
>           equivalent value in exchange for the
>           transfer or obligation if the debtor-
>      . . .
>           (ii) intended to incur, or believed or
>           reasonably should have believed that
>           he would incur, debts beyond his
>           ability to pay as they became due.

28 U.S.C. § 3304(b)(1)(B)(ii).  This provision mirrors 28 U.S.C. §
3304(a)(1)(A), (B), with the exception that it requires a showing, at
a minimum, that Becker believed "he would incur debts beyond his ability
to pay as they became due."

Given Becker had notice of the full restitution debt and notice
that $200,000 was due on April 13, 2001, coupled with his admitted
insolvency after transferring his interest in the house and the
condominium, there is no serious argument, in fact or in law, but that
he believed that he would incur debts beyond his ability to pay.

Accordingly, the transfer of Becker's interest in the house and the
condominium to his wife was fraudulent within the meaning of 28 U.S.C.
§ 3304(b)(1)(B)(ii).

-23-

**E.    Value of Becker's Interest**

The court turns to determine the value of Becker's interest, if any, in the house and condominium at the time the lien attached. Finding no authority, the issue of property interest for restitution payments under 18 U.S.C. § 3663(a) appears to be one of first impression in the Eighth Circuit.

*1.    House*

As the court has held above, the house was held in trust by Becker and wife as tenants in common at the time the lien was placed on the property. Under Missouri law, a tenancy in common is presumed to allot equal shares to the tenants in common, absent some proof to the contrary, such as one tenant paying a disproportionate amount of the purchase price or contrary language in the deed. <u>Montgomery v. Roberts</u>, 714 S.W.2d 234, 236 (Mo. Ct. App. 1986). There is no evidence in the record rebutting this presumption. Therefore, the court concludes that the value of Becker's interest in the house at the time the lien attached was one-half of the total value of the house.

Even if we assume that the house was still held as tenants by the entireties property after its transfer to the trust, Becker's interest in the house at the time the lien attached would still be one-half the value. The value of a spouse's interest in property held as tenants by the entireties has been held to be an equal division. <u>In re Gallivan</u>, 312 B.R. 662, 666 (Bankr. W.D. Mo. 2004) ("each tenant's interest in property held as TBE is equal"); <u>In re Garner</u>, 952 F.2d 232, 236 (8th Cir. 1991). "If a husband and wife have unity of interest, unity of entirety, unity of time and unity of possession, then each spouse must hold an equal interest." <u>Gallivan</u>, 312 B.R. at 666. Although these cases deal with determining one spouse's interest in tenancy by the entireties property at bankruptcy, the court finds them persuasive to determine Becker's tenancy by the entirety interest in this situation. Therefore, even if the house was still held as tenants by the entireties

property after its transfer to the trust, Becker's interest at the time the lien attached was one-half the value of the house.

Therefore, the court will order the sale of the house, and one-half of the sale price minus one-half of the mortgage be awarded to plaintiff, to be applied to Becker's restitution debt, pursuant to plaintiff's request for relief. (Doc. 59 at 3.)

### 2. Condominium

With respect to Becker's interest in the condominium, defendants assert that Becker essentially held legal title to the property for the interest and benefit of his son Stephan. Becker alleges that he paid no money toward the condominium, provided his son with no money for use in the condominium, and neither he nor Patricia Becker retained any portion of the proceeds of the sale, giving the money to Stephan. Becker further maintains his only interest in the condominium was as a co-signer of the mortgage.

Plaintiff acknowledges that Stephan was the more equitable owner of the property. However, plaintiff argues this is immaterial to establish Becker's interest, because Stephan had no legal interest in the property at the time of judgment and subsequent lien. The court agrees.

Since the lien attached to the condominium at the entry of judgment, which was March 1, 2001, Stephan held no interest in the condominium at that time, and Becker and his wife held the condominium as tenants in common. Property held as tenancy in common property is presumed to allot equal shares to the tenants absent contrary evidence. Montgomery, 714 S.W.2d at 236. There being no evidence to the contrary, Becker and his wife each held one-half shares in the condominium. There are no facts to rebut this presumption because neither Becker nor his wife gave any more contributions to the condominium than the other. The condominium was sold to a third party at a profit of $55,512.98, half of which can be attributed as an interest in property to Becker at the time the lien attached.

Therefore, pursuant to plaintiff's request for remedy (Doc. 59 at 2), the court awards one-half of the sale proceeds of the condominium,

($27,756.49) plus interest at a rate of five percent from March 22, 2002 until the judgment, to be paid towards Becker's restitution debt.

**CONCLUSION**

For all the aforementioned reasons, plaintiff is entitled to summary judgment on Counts 2, 4, 5, and 7 of the first amended complaint. On Counts 2 and 4, the court orders judgment against defendants in the amount of $27,756.49, plus pre-judgment interest[6] at the rate of five percent[7] from March 22, 2002, until the date of this judgment, plus interest hereafter in the amount provided by 28 U.S.C. § 1961.

On Counts 5 and 7, the court orders a judicial sale of Lot 1 of State Park Estates through a real estate agent. One-half of the proceeds of the sale, minus one-half of the $34,105.15 mortgage indebtedness owed by the Beckers prior to the 2003 refinancing, shall be applied to the aforesaid criminal case restitution debt prior to any other distribution of the proceeds of the sale.

Pursuant to plaintiff's request, Counts 1, 3, and 6 of the first amended complaint are dismissed with prejudice.

An appropriate Judgment is issued herewith.

_David D. Noce_
_____
DAVID D. NOCE
UNITED STATES MAGISTRATE JUDGE

Signed on September 28, 2005.

---

[6]See 31 U.S.C. § 3717.

[7]The amount of pre-judgment interest is set by the Secretary of the Treasury. See 31 U.S.C. § 3717(a)(1). The interest rate for March 2002 was five percent. See http://www.fms.treas.gov/cvfr/index.html (last visited September 28, 2005).